UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TREMAIN VERNON JONES,

               Plaintiff,

v.

CONNIE HORTON et al.,

               Defendants.

_____/

Case No. 2:21-cv-83

Honorable Robert J. Jonker

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's complaint against Defendants MDOC, Horton, Miller, and Dicus. The Court will also dismiss, for failure to state a claim, Plaintiff's requests for declaratory and injunctive relief and the following claims against the remaining Defendants: his Eighth Amendment claim against Defendant Martin and his conspiracy and due process claims against Defendants Martin, Baker, and Stranaly.

### Discussion

I.    **Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the MDOC[1] and the following URF officials: Warden Connie Horton; Inspector T. Miller; Registered Nurse Ressie A. Stranaly; and Correctional Officers Duncan Martin, Eric Baker, and B. Dicus.

Plaintiff's complaint consists of 65 pages of repetitious factual allegations, intermixed with even more repetitious legal conclusions.[2] According to the complaint, on July 25, 2019, Plaintiff was considered a medically vulnerable prisoner, due to his insulin-dependent diabetes, seizure disorder, high blood pressure, high cholesterol, vision impairment, sleep apnea, PTSD, and ankle and heel injury. Plaintiff had a number of medical accommodations for those conditions (Ex. 11 to Compl., ECF No. 1-11, PageID.105–106), including authorization for the use of a cane and the use of a wheelchair for distance.

Plaintiff resided in Unit E-1, cell E-155 on July 25, 2019. In the early morning hours, as he was putting his commissary items in his footlocker, Defendant Baker came to the unit and asked Plaintiff and prisoner McSwain which of them was prisoner Jones. McSwain identified Plaintiff as prisoner Jones. Defendant Baker looked at Plaintiff and said, "We haven't gotten acquainted

---

[1] Plaintiff's allegations arguably suggest that he intends to name the MDOC as a party in this action. Reading the complaint generously, the MDOC has been listed as a defendant.

[2] Plaintiff's complaint also is extraordinarily difficult to read because his printed letters, though carefully executed, are obscured by the ornamentation of his handwriting. Plaintiff is encouraged to use a simple print style in future filings.

yet, have we Jones?" (Compl., ECF No. 1, PageID.16.) Defendant left, but he returned after his rounds and entered Plaintiff's cube without notifying the residents of his entry. As Plaintiff was bending over to get commissary items to hand to McSwain, Defendant walked up to Plaintiff from behind, rubbed his penis and groin areas against Plaintiff's buttocks, and pinched Plaintiff's right buttocks cheek. Startled, Plaintiff reflexively spun around with his fists clenched to defend himself from the unknown assaulter.

As soon as Plaintiff saw that the person behind him was wearing an MDOC uniform, he unclenched his fists. However, he stated in a panicked voice, "What's your problem? Why did you do that? More importantly, why didn't you announce yourself as staff before coming into the unit." (*Id.*, PageID.17.) Defendant Baker responded with more offensive behavior, grabbing his own groin and stating, "I did announce myself, can't you see all of me?" (*Id.*) Plaintiff replied, "I ain't no homosexual, and I don't play those little gay slip games period! . . . Get the f**k outta here with all of that nonsense!" (*Id.*, PageID.18.) Defendant Baker then asked if Plaintiff intended to file a PREA[3] grievance against him, and Plaintiff denied understanding what Baker was talking about.

Seeing how shaken Plaintiff was, two prisoners from Plaintiff's cube (Craft and McSwain) went to the officers' desk to report the sexual assault to Sergeant Bawk (not a defendant), Defendant Correctional Officer Dicus, and Correctional Officer Woodgate (not a defendant). Plaintiff was then summoned to the desk, where Sgt. Bawk asked Plaintiff who had assaulted him. When Plaintiff responded that Defendant Baker had done so, Bawk, Dicus and Woodgate all began laughing uncontrollably. Plaintiff asked what was so funny, and Bawk responded, "Now that we know who the officer is, I totally believe you 100%, and you're right defendant Baker should not

---

[3] "PREA" is the acronym for the Prison Rape Elimination Act, 34 U.S.C. § 30301 et seq.

have done that to you. I'll talk to one of my buddies who works on [first] shift and see if he can have defendant Baker to knock it off or something." (*Id.*, PageID.19.) Concluding that the event would be swept under the rug, Plaintiff requested a prisoner grievance form. At that, all joking stopped. Defendant Dicus stated,

> No, no, no, Jones, you don't wanna grieve something like that against defendant Baker. He has a family and everything! Here, why don't you take this prisoner kite paper and write down everything that you say that defendant Baker did to you, and what I will do is before I leave work tonight, I will personally place your kite into 2nd Lieutenant Trotter's mailbox and let him deal with this situation, alright!

(*Id.*) Plaintiff complied with the instructions given by Defendant Dicus, returning to his cell and typing up the same chronicle of events presented in the instant complaint. When he brought the kite back, Defendant Dicus read the kite and asked Plaintiff if he was sure he wanted to submit it. Plaintiff stated that he did, and Dicus folded the kite and placed it in the pocket of his pants. Defendant Dicus left for the day without submitting the kite to Lieutenant Trotter. He instead allegedly threw the kite into the trash.

Prisoner Craft asked Sgt. Bawk why, knowing that Defendant Baker was a homosexual predator, they allowed Baker to continue to prey on inmates. Officer Woodgate responded that Defendant Baker was a bisexual, not a homosexual. Sgt. Bawk told the prisoners that they did not need to file a grievance about the situation, that Baker had a family, and that Bawk would talk with a supervisor. Sgt. Bawk warned, "You writing a Griev[ance] is just gonna turn out bad for you, not us, you see we're on our way home, you're the one whose [sic] living here. Nope, don't write a Griev[ance] yet!" (*Id.*, PageID.21.)

Plaintiff states that prisoners Craft, Culver, McSwain, Covington, Heard, Fairley, Broome, and Hendrick were present or had other direct knowledge of the assault and the interaction at the officers' desk. He has attached as exhibits to his complaint affidavits from Prisoners Craft,

McSwain, Culver, and Covington. (Compl., ECF No. 1, PageID.25; Exs. 2–5 to Compl., ECF Nos. 1-2–1-5, PageID.72–88.)

When Plaintiff realized that he might now become a target for retaliation, he called his family and told them what had happened. He asked family members to assist him. Various family members filed complaints with law enforcement agencies on Plaintiff's behalf, seeking an external investigation into the sexual assault.

Eleven days after the assault, on August 5, 2019, Plaintiff was summoned to the control center, where he was interviewed by Defendant Martin about the PREA grievance. Defendant Martin allegedly began threatening to have Plaintiff criminally prosecuted for filing a false felony complaint against Defendant Baker. Martin told Plaintiff that his conviction on such an offense would carry a sentence of 45 to 65 years. Plaintiff responded,

> What do you mean that you're going to be prosecuting me? It was your officer who came into my cube, walked directly up to me and pinched my butt cheek and rubbed himself all up against me without my knowledge, consent or request for him to do so!!! . . . I'm not now, nor have I ever engaged in any type of homosexual activity and for the life of me, I cannot understand why this particular prison guard decided to prey upon me and sexually assault me for his own sexual gratification without cause, provocation, or justification whatsoever!

(*Id.*, PageID.22.)

After being told that he was going to be criminally prosecuted and exposed to a lengthy sentence, Plaintiff submitted a medical kite, asking to be seen by his psychologist, Dr. Herbert, to discuss what had happened to him. Plaintiff told Herbert that he was having difficulty coping and did not know how to deal with the sexual assault. The following day, August 6, 2019, Plaintiff was pushed in his wheelchair to the school building, where he met with Dr. Herbert to talk about what had happened. Herbert allegedly told Plaintiff that, if he had family support, he should have them contact the Governor's office and any other law enforcement agency they could. Herbert stated,

> if you don't the Administration is going to do everything in their power to turn this all around on you and prosecute you instead of officer Baker! I've seen it here time and time again, and it never turns out good for the inmate who reports something as serious as this here that you just reported. Do you understand what it is that I'm saying to you Mr. Jones? . . . [R]ecord anything that staff does to you that you believe is done in retaliation for filing your PREA complaint for sexual assault against officer Baker!

(*Id.*, PageID.23.)

On August 7, 2019, at approximately 9:46 a.m., while Plaintiff was in the prisoner counselor's office discussing the PREA complaint with Prisoner Counselor Nathan D. Line (not a defendant), Defendant Baker busted into Line's office and, with fists clutched, stated,

> Here's this mother-fucker Jones! Who do you think you are lying on me like that. I never did shit to you! It[']s alright, do you know who the fuck I am[?] I'll have your crack-smoking, drug dealing ass KILLED in this bitch.

(*Id,*, PageID.24.) Plaintiff immediately stated that he felt threatened, and he told Defendant Baker to get out of his face. Baker would not move, and Plaintiff stated, "I'm not asking you again to get from out of my face . . . There's only one way outta this office and you're blocking the doorway, and if you don't move from in front of the doorway and let me out, I am coming out of this office one way or the other!" (*Id.*) Baker refused to move, and Plaintiff began to remove his glasses and put down his cane. At this point, Prison Counselor Line jumped between Plaintiff and Baker and told Baker to leave the building immediately. After witnessing Baker burst into his office and threaten Plaintiff, Prisoner Counselor Line called both Defendant Inspector Miller and Resident Unit Manager Thompson (not a defendant) on the phone. Defendant Miller filed an additional complaint against Defendant Baker for retaliation.

On August 7, 2019, Plaintiff submitted a letter to Defendant Horton, making a formal sexual-assault/assault-and-battery complaint and reiterating his desire for an external investigation. Plaintiff received no response from Defendant Horton. Plaintiff later submitted another grievance to Defendant Horton, expressing fear for his personal health and safety due to

6

retaliation for his PREA complaint. Plaintiff complains that Defendants Horton and Miller conspired with Defendant Baker to deny or fail to investigate the complaint against Baker and to instead investigate Plaintiff. Defendants Miller and Horton denied all of Plaintiff's grievances.

After the incident in Line's office, Plaintiff sent another kite seeking a visit with Dr. Herbert. Dr. Herbert responded that he would try to see Plaintiff the following week and that, in the meantime, Plaintiff should follow Herbert's earlier advice about continuing to use other avenues of reporting.

Thereafter, Plaintiff wrote the Legislative Corrections Ombudsman, Keith Barber, providing a description of the facts, affidavits, and copies of his grievances. Plaintiff told Barber that he feared for his health and safety. Plaintiff received a response from the ombudsman on September 4, 2019, informing him that his complaint had been received and was being investigated. One month later, an agent from the ombudsman's office, chief analyst Eric Mattson, came to URF and interviewed both prisoner Hardrick and Plaintiff about the sexual assault. Mattson told Plaintiff that either he or analyst Alexis Noffke would be following up with Plaintiff. Neither did so, nor did they provide a determination from the investigation.

Sometime between September and December 2019, Defendant Martin called prisoners Craft and McSwain to his office to discuss the statements they had provided about Defendant Baker's sexual assault of Plaintiff. During the interviews, Defendant Martin told prisoners Craft and McSwain that, if they did not change their stories, he would prosecute them alongside Plaintiff. He then demanded new answers. Martin did not interview prisoners Culver and Covington, who were both present.

Plaintiff alleges that, once information got around that he had filed a PREA complaint, various other prison officials retaliated against him. On an unspecified date in July 2019, Plaintiff

came to the health care building to get his insulin injection during the regular medication line. Defendant Nurse Stranaly, who was conducting the medication line, pressed her panic button, pointed her finger at Plaintiff and announced that Plaintiff had disregarded her direct order to get out of his wheelchair, to put it against the wall, and to return to his unit. Stranaly claimed that Plaintiff did not have a valid accommodation to use the wheelchair, because the chair was only authorized for distance. She stated that Plaintiff did not need the wheelchair anyway, and she demanded that Plaintiff get out of her sight. Eight guards, all of whom could see his foot was in a cast, took Plaintiff's wheelchair and forced him to walk back to his unit in significant pain.

On July 22, 2019, during evening medication line, Plaintiff asked the nurse on duty if nurses had the authority to discontinue any prescription authorized by a doctor. The nurse responded that no nurse had such authority, and she then asked Plaintiff where his wheelchair was. Plaintiff told the nurse that Stranaly had taken it because he filed a PREA grievance against Defendant Baker. The nurse told Plaintiff that she would check his chart and that, if his accommodation was still valid, she would call the unit and have the chair given back to Plaintiff. The next day, Plaintiff was called to the medical unit to get his wheelchair.

Plaintiff filed a grievance about the incident, which was denied at Step-I on July 31, 2019. Plaintiff complains that Defendant Stranaly's supervisor, Gerald Covert (not a defendant), conspired with Stranaly by issuing a false and fraudulent grievance response, denying that the wheelchair was ever taken and stating that Plaintiff was informed only that the wheelchair was only for distance and that it was better not to have it in the waiting room because of crowding. Plaintiff appealed to Step II of the grievance process. The Step-II respondent concluded that Plaintiff had a valid accommodation for the grievance and that Defendant Stranaly had improperly seized it from Plaintiff on that day.

On July 27, 2019, Plaintiff suffered a seizure and asked to be sent to health care. Seeing that Plaintiff had bruising to his face, jaw and tongue areas, the prison guard called health care to see it he could send Plaintiff for treatment. Defendant Stranaly told the guard,

> Jones wrote a PREA grievance for sexual assault against Eric and now he wants me to do him a favor by letting him come to medical. . . . No, I don't think so. Tell Jones to sit in his wheelchair and write another grievance on me, I don't give a shit, and No, don't send him over here!

(*Id.*, PageID.33.) Plaintiff received no treatment for his injuries.

Plaintiff suffered another seizure on November 11, 2019, which caused injuries to his head and forearm. Multiple prisoners and guards provided this information to Stranaly when she responded to the restroom where Plaintiff was lying on the shower floor. Defendant Stranaly provided no medical care, despite the opinion of correctional officers and other medical staff that the deep, 1.25 inch cut near Plaintiff's eye appeared to require stitches. Stranaly called Plaintiff a "cry baby" and ordered him back to his housing unit. (*Id.*, PageID.34.) She told Plaintiff, "In the future, to avoid having these problems, you should never, ever write another frivolous PREA grievance on staff. Don't you know that officer Baker (defendant Baker) has a family? Besides that, he's my friend!" (*Id.*, PageID.35.) Plaintiff submitted grievances about the incident.

Plaintiff alleges that Defendant Dicus also harassed Plaintiff in retaliation for filing the PREA grievance. When Plaintiff gave a kite to Defendant Dicus, Dicus threw it away, thereby concealing Baker's assault from Defendants Horton, Miller, and Martin. Defendant Dicus also allegedly forced Plaintiff out of his wheelchair for unnecessary strip searches. (*Id.*, PageID.52.)

Plaintiff states that Defendant Baker had assaulted other prisoners and that Defendants Miller, Horton, Martin, and Dicus all knew or should have known of at least three alleged unspecified assaults by Baker since January 2017, two of which were mentioned in lawsuits filed by other prisoners in the first half of 2018. (*Id.*, PageID.38.) Later in the complaint, Plaintiff alleges

that Defendant Baker sexually assaulted another prisoner the day before Plaintiff's alleged victimization. (*Id.*, PageID.41.) Plaintiff contends that Defendants Miller, Horton, Martin, and Dicus therefore are liable for failing to prevent Defendant Baker's sexual assault on Plaintiff. Plaintiff also appears to contend that, by failing to respond to grievances and obstructing the grievance process, Defendants became liable for Defendant Baker's sexual assault, because they covered it up. He contends that Defendant Horton failed to train her subordinates, thereby causing the likelihood of an assault. In addition, Plaintiff alleges that Defendants Miller, Dicus, Baker, and Stranaly retaliated against him for filing a PREA grievance and that Defendants Miller, Horton, and Martin were aware that correctional officers and other staff frequently retaliated against prisoners who filed grievances and are therefore liable for the retaliation. Further, Plaintiff complains that Defendant Stranaly retaliated against him and violated his rights under the Eighth Amendment by taking his wheelchair and refusing to provide medical care, including stitches and pain medication, after Plaintiff incurred injuries from having seizures.

Plaintiff seeks a declaratory judgment that all Defendants have violated various constitutional rights, an injunction requiring certain medical treatment and expungement of his 59 Class-I and Class-II misconduct convictions, and $300,000 in compensatory damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Sovereign immunity

To the extent that Plaintiff intends to sue the MDOC, his claim must be dismissed because the MDOC is immune from suit and is not a "person" within the meaning of § 1983. Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Accordingly, Plaintiff's claim against the MDOC also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

## IV. Conspiracy

Plaintiff alleges that Defendants Miller and Horton conspired with Defendant Baker to deny or fail to investigate Plaintiff's PREA claim against Defendant Baker. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations

unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that show that any Defendant shared a conspiratorial objective. Instead, Plaintiff simply presumes that Defendants Miller and Horton conspired with Defendant Baker because they denied or failed to respond to his grievances. Such allegations barely hint at the "possibility" of conspiracy; they certainly do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 557. Even assuming that the allegedly parallel conduct is consistent with an unlawful agreement, it is woefully insufficient to state a claim, because it is "not only compatible with, but indeed [i]s more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

Plaintiff's conclusory allegations of conspiracy therefore fail to state a claim against Defendants Miller, Horton, and Baker.

## V.   Failure to follow policy

Plaintiff suggests that he was deprived of due process when Defendants failed to follow various prison policies respecting the filing and resolution of grievances, the investigation of sexual assault complaints, the training on sexual assault and harassment, and the banning of retaliation. Such allegations fail to implicate a constitutional claim.

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60

13

F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

## VI. Eighth Amendment

Plaintiff alleges that Defendant Baker violated the Eighth Amendment by sexually assaulting Plaintiff and by physically and verbally threatening Plaintiff after learning about Plaintiff's grievance. He also alleges that Defendants Horton, Miller, Martin, and Dicus are liable for Defendant Baker's Eighth Amendment violation under a variety of theories: (1) Defendants all knew or should have known that Defendant Baker had been sued by two inmates for an unspecified assault in the first half of 2018 but failed to protect Plaintiff; (2) Defendants failed to follow policy or properly handle Plaintiff's grievances and kites and failed to punish Defendant Baker for the assault; and (3) Defendants Horton, Miller, and Martin failed to train or supervise their subordinates. In addition, Plaintiff alleges that Defendant Nurse Stranaly violated Plaintiff's

14

Eighth Amendment rights in several ways: (1) she maliciously took away his wheelchair and forced him to walk on an injured foot back to his cell and for days thereafter until another officer returned the wheelchair; (2) she denied him medical treatment and pain relief following his July 27, 2019, seizure, during which he suffered bruising to his face, jaw, and tongue areas; and (3) she denied him medical treatment and pain relief following his November 11, 2019, seizure, during which he suffered injuries to his head and forearm, including a deep 1.25-inch cut near his eye that custodial staff and other medical personnel believed required stitches.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A. Defendant Baker

Upon initial review, the Court concludes that Plaintiff's allegations concerning Defendant Baker's sexual assault are sufficient to state an Eighth Amendment claim.

### B. Defendant Stranaly

The Court concludes that Plaintiff has sufficiently alleged facts supporting his claim that Defendant Stranaly acted with deliberate indifference to his serious medical needs when she denied him healthcare treatment for his injuries following both of his seizures.

The Court also concludes that Plaintiff has alleged facts that, if true, demonstrate that Defendant Stranaly acted maliciously and wantonly to take away his wheelchair and to deny him medical care, in violation of the Eighth Amendment. The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* Plaintiff's allegations about Defendant Stranaly are sufficient to state a claim based on the wanton infliction of pain.

Plaintiff's allegations that Defendant Stranaly violated his Eighth Amendment rights therefore are sufficient to state a claim under both theories.

### C.      Defendants Horton, Miller, Martin & Dicus—liability for Baker's actions

Plaintiff contends that Defendants Horton, Miller, Martin and Dicus are liable for the Eighth Amendment violations of Defendant Baker, because they covered up the assault by throwing away or mishandling his grievances and failing to punish Baker. Plaintiff also sweepingly suggests that Horton failed to train her subordinates in some unspecified way, rendering her liable for the Eighth Amendment violations of the other Defendants. Finally, Plaintiff alleges that Defendants Horton, Miller, Martin, and Dicus knew or should have known that two other prisoners had filed lawsuits against Defendant Baker in early 2018, in which they alleged an unspecified assault, and should have known of an unidentified assault on another prisoner the day before Plaintiff's alleged assault.

### 1.      Supervisory liability

Plaintiff alleges that Defendant Horton failed to supervise and train her subordinates to prevent the other defendants from violating his First and Eighth Amendment rights, and that Horton, Miller, Martin, and Dicus failed to properly handle his grievances, failed to conduct an investigation in response to Plaintiff's kites and grievances, and failed to punish Defendant Baker.

17

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has no constitutional right to file or be successful on a prison grievance, and he has no right to a particular grievance procedure. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Nor

is Plaintiff's right to petition government violated by any defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Here, Plaintiff's allegations rest almost entirely on the conclusory notion that Defendants either failed to supervise or mishandled his grievances. As discussed, such general allegations are insufficient to establish liability under § 1983.

Plaintiff alleges, however, that Defendants knew or should have known that Defendant Baker engaged in assaultive behavior and therefore should have prevented the assault against Plaintiff. In support of his claim, Plaintiff alleges that two prisoners sued Defendant Baker in early 2018—more than a year before the actions alleged in the instant complaint—alleging that Baker had committed some unspecified assault and that Baker assaulted another prisoner the day before the incident about which Plaintiff complains.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). As with other Eighth Amendment claims, to establish liability for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506

(6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Here, Plaintiff's allegations fall far short of demonstrating deliberate indifference, as they rest on multiple largely unsupported assumptions. Plaintiff assumes that Defendants must have been aware of earlier lawsuits that named Defendant Baker, but he alleges no facts in support. Plaintiff also assumes deliberate indifference from the existence of two lawsuits that were filed more than a year before the conduct about which he complains—conduct that itself took place earlier, perhaps much earlier, than the time of the lawsuits.[4] Further, Plaintiff fails even to allege that the conduct for which Defendant Baker was sued in 2018 was of the same nature as alleged here. Thus, all of the assumptions are only tenuously connected with any facts.

Further, even assuming that Plaintiff's assumptions about Defendants' knowledge of the prior lawsuits were true, the allegations fail to demonstrate deliberate indifference under either prong of the standard. Plaintiff's assertion that other prisoners had alleged that Baker committed some sort of assault more than a year before the attack in issue falls short of demonstrating an objectively excessive risk to inmate health or safety. Moreover, Plaintiff's general reference to an alleged event the preceding day is far too close in time to demonstrate that Defendants were aware

---

[4] The Court notes that Plaintiff elsewhere indicates that the events about which Defendants should have known started in January 2017.

of such a risk. Moreover, Plaintiff alleges no facts that would support a conclusion that any Defendant subjectively both knew of and disregarded such risk.

Thus, Plaintiff's claims that Defendants Horton, Miller, Martin, and Dicus failed to supervise Defendant Baker are largely conclusory and fail to demonstrate that Defendants were deliberately indifferent to a serious risk of harm to Plaintiff. Moreover, mere supervisory authority and failure to properly handle or resolve Plaintiff's grievances fall short of stating a § 1983 claim.

### 2.      Failure to train

Plaintiff sweepingly alleges that Defendant Horton is liable for Defendant Baker's conduct because she failed to train her subordinates. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Here, Plaintiff utterly fails to allege the nature of the training that Horton failed to provide or to identify specific shortcomings of that training. Because his allegation about Defendant Horton's alleged failure to train is conclusory, Plaintiff fails to state a failure-to-train claim against her.

### D.      Defendant Martin

In addition to his allegations of supervisory liability, Plaintiff alleges that Defendant Martin threatened to have Plaintiff criminally prosecuted for filing a false criminal complaint against Defendant Baker, exposing Plaintiff to a potential sentence of 45 to 65 years' imprisonment. Plaintiff suggests that Defendant Martin's threats violated the Eighth Amendment.

As discussed, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Defendant Martin's threat to have Plaintiff criminally prosecuted simply does not fall within the ambit of the Eighth Amendment. As a consequence, Plaintiff fails to state an Eighth Amendment claim against Defendant Martin.

### E.     Defendant Dicus

Plaintiff alleges that, in addition to failing to process his grievances against Defendant Baker, Defendant Dicus ordered Plaintiff out of his wheelchair for unnecessary strip searches. Plaintiff provides no additional details concerning these allegedly excessive strip searches, and he identifies no serious risk of injury posed by such searches. As a consequence, Plaintiff's conclusory Eighth Amendment claim against Defendant Dicus fails at the first step.

## VII.   Retaliation

Plaintiff complains that all Defendants retaliated against him for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A.   Defendants Horton & Miller

Plaintiff contends that Defendants Horton and Miller are liable for the retaliatory acts of other Defendants because they failed to supervise and failed to properly investigate and resolve Plaintiff's grievances. Plaintiff also repeatedly references his right to file grievances under prison policies, as well as his right under those policies to be free from staff retaliation for filing such grievances. *See* MDOC Policy Directive (PD) 03.02.130 ¶¶ F, L (eff. Mar. 18, 2019) (describing what can be grieved and barring retaliation); PD 03.03.140 ¶¶ TT, UU, WW, PPP (requiring

mandatory staff reporting of sexual abuse, listing the numerous methods for a prisoner to report prohibited conduct and the procedures for investigation of reports, and barring retaliation for reporting or participating in an investigation of sexual abuse). Plaintiff suggests that, by not ensuring that the other Defendants followed prison policy on grievances, Defendants Horton and Miller are liable for the retaliatory acts of their subordinates.

As earlier discussed, Defendants Horton and Miller are not vicariously liable for the actions of their subordinates. Also as earlier discussed, Plaintiff has no independent right to file grievances—only to be protected from adverse action for doing so. Plaintiff wholly fails to allege that Defendants Horton and Miller engaged in adverse action. He therefore fails to state a claim against them.

### B.    Defendant Dicus

Plaintiff complains that Defendant Dicus retaliated against him for filing a grievance by disposing of or refusing to process that grievance.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (concluding that the refusal to file a grievance is,

without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (finding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (concluding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (concluding the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim).

Refusing to process a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences. Prisoners do not have a right to an effective grievance procedure, and they suffer no consequences for filing a grievance that is not processed. It is true that a prisoner must exhaust available administrative remedies before bringing a civil-rights claim in court, *see* 42 U.S.C. § 1997e(a), but even assuming that Defendant improperly prevented Plaintiffs from pursuing particular grievances, Defendant could not have prevented Plaintiffs from pursuing a civil-rights claim based on an issue raised in those grievances. If Defendant thwarted Plaintiff's ability to use the grievances process, then the process was not "available" to Plaintiff for that claim, and exhaustion would not be a prerequisite for initiation of a civil-rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001).

Because Plaintiff fails to allege that Defendant Dicus took adverse action against him, Plaintiff fails to allege facts supporting the second element of his retaliation claim. The Court therefore will dismiss Plaintiff's retaliation claim against Defendant Dicus.

### C.    Defendant Martin

Plaintiff complains that Defendant Martin threatened to have Plaintiff criminally prosecuted for filing a false complaint against Defendant Martin, potentially exposing Plaintiff to a lengthy prison sentence. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (discussing a threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (discussing a threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Upon initial review, the Court concludes that Plaintiff has sufficiently stated a retaliation claim against Defendant Martin.

### D.    Defendant Baker

Plaintiff alleges that Defendant Baker, upon learning of Plaintiff's complaint, physically threatened Plaintiff with injury or death. Plaintiff's retaliation claim against Defendant Baker is sufficient to survive initial review.

### E.    Defendant Stranaly

Plaintiff alleges that Defendant Stranaly deprived him of his wheelchair and denied him medical treatment on multiple occasions, expressly because Plaintiff filed a grievance against Defendant Baker. Plaintiff's allegations are sufficient to state a retaliation claim against Defendant Stranaly.

## VIII. Declaratory & injunctive relief

Plaintiff seeks declaratory and injunctive relief from the named Defendants in their official capacities. The Eleventh Amendment presents no bar to suit in federal court where equitable relief is sought against State officials who continue to violate federal law. *Cory v. White*, 457 U.S. 85, 90 (1982); *Pennhurst State School & Hospital*, 465 U.S. at 103. However, in the present action, the allegations made by Plaintiff concern only past events. He is no longer housed at URF and faces no ongoing risks from the named Defendants. Past exposure to illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subject to the illegal conduct again or present a "case or controversy," if unaccompanied by any continuing, present adverse effects. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988). *See also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. In the present action, the plaintiff has made no factual showing of an official policy or practice that indicates that the alleged activity is likely to occur again. Therefore, the possibility that Plaintiff will be subjected to the same allegedly unconstitutional activity is too speculative to warrant injunctive relief or to deem the alleged activity a continuing violation of federal law.

Moreover, Plaintiff's request for injunctive relief in the form of expungement of all of his past misconduct convictions appears to be wholly unrelated to the issues he raises in his complaint. An injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also King v. Zamiara*, 788 F.3d 207, 217-218 (6th Cir. 2015); *Dunbar v. Prelesnik*, No. 1:13-cv-1100, 2015

WL 1393376, at *4 (W.D. Mich. Mar. 25, 2015), *aff'd on this issue, vacated on other grounds*, No. 16-1374, 2016 WL 11618615, at *3 (6th Cir. Oct. 27, 2016).

Finally, where there is no claimed continuing violation of federal law, no occasion to issue an injunction, and a declaratory judgment would serve no useful purpose, declaratory relief is inappropriate. *Green v. Mansour*, 474 U.S. 64, 73 (1985). In the present action, there is no claimed continuing violation of federal law and no occasion to issue an injunction. Declaratory relief, like injunctive relief, is prospective only. *See Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (holding that, in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief). Further, a declaratory judgment would serve no purpose here, where Plaintiff is no longer in any Defendant's custody and therefore faces no risk of future harm from Defendants.

For these reasons, the Plaintiff's demands for equitable relief will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Horton, Miller, and Dicus will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's requests for declaratory and injunctive relief and the following claims against the remaining Defendants: his Eighth Amendment claim against Defendant Martin and his conspiracy and due process claims against Defendants Martin, Baker,

and Stranaly. Plaintiff's Eighth Amendment claims against Defendants Baker and Stranaly and his

retaliation claims against Defendants Martin, Baker, and Stranaly remain in the case.

An order consistent with this opinion will be entered.


Dated:      May 17, 2022                         /s/ Robert J. Jonker
                                                Robert J. Jonker
                                                Chief United States District Judge

28